# 24-826

## United States Court of Appeals
## for the Second Circuit

MANGROVE PARTNERS MASTER FUND, LTD.,
SM MERGER/ARBITRAGE, L.P., SM INVESTORS, L.P.,
and SM INVESTORS II, L.P., on behalf of themselves
and all others similarly situated,

*Plaintiffs-Appellants,*

EHAB KHALIL,

*Plaintiff-Movant-Appellant,*

MASO CAPITAL INVESTMENTS LIMITED,
MASO CAPITAL ARBITRAGE FUND LIMITED,
BLACKWELL PARTNERS LLC SERIES A
and STAR V PARTNERS LLC,

*Plaintiffs,*

*(See inside cover for continuation of caption)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

DLA PIPER LLP (US)
*Attorneys for Defendants-Appellees*
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
john.clarke@us.dlapiper.com
jessica.masella@us.dlapiper.com
steven.rosato@us.dlapiper.com

*Printed on Recycled Paper*

**2258**



———————————————————————

v.

BRISTOL–MYERS SQUIBB COMPANY, GIOVANNI CAFORIO,
VICKI L. SATO, PETER J. ARDUINI, ROBERT BERTOLINI,
MATTHEW W. EMMENS, MICHAEL GROBSTEIN, ALAN J. LACY,
DINESH C. PALIWAL, THEODORE R. SAMUELS,
GERALD L. STORCH, KAREN H. VOUSDEN,
CHARLES BANCROFT, KAREN M. SANTIAGO
and SAMIT HIRAWAT,

*Defendants-Appellees,*

DAVID V. ELKINS,

*Defendant.*

———————————————————————

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant-appellee Bristol-Myers Squibb Company states, by and through its counsel, that it is a publicly held corporation, that it has no parent corporation, and that no publicly held corporation owns 10% or more of its stock.

## Table of Contents

Page

INTRODUCTION ..................................................................... 1

JURISDICTIONAL STATEMENT .................................................. 3

ISSUES PRESENTED ............................................................... 4

STATEMENT OF THE CASE ...................................................... 5

    A.    Factual Background ..................................................... 5

        1.    The Parties ......................................................... 5

        2.    The Contingent Value Rights ..................................... 6

        3.    The Liso-Cel Application ......................................... 8

    B.    The Proceedings Below ................................................ 12

        1.    Plaintiffs' Claims ................................................. 13

        2.    Dismissal of the First Amended Complaint .............. 17

        3.    Dismissal of the Second Amended Complaint ........... 19

SUMMARY OF ARGUMENT ..................................................... 22

STANDARD OF REVIEW .......................................................... 25

ARGUMENT ......................................................................... 27

I.    The District Court Correctly Dismissed Plaintiffs' Claims Based on the Registration Statement and Proxy Statement.................................................................. 27

    A.    The PSLRA Safe Harbor Applies. ..................................... 28

        1.    The Statements Were Forward-Looking. ................... 29

        2.    The Statements Were Accompanied by Meaningful Cautionary Language. ............................ 33

Page

       3.     There Were No Plausible Allegations of Actual Knowledge of Falsity. ................................. 36

   B.   Plaintiffs Otherwise Failed to Plead Falsity. ...................... 37

   C.   The "Controlling Person" Claims Also Were Correctly Dismissed. ................................. 40

II.   The District Court Correctly Dismissed Plaintiffs' Claims of Securities Fraud. ................................. 40

   A.   Plaintiffs Did Not Allege Any Actionable Misstatement or Omission. ................................. 41

       1.     Plaintiffs Failed to Allege Falsity. ............................ 41

       2.     Many Statements Were Subject to the Safe Harbor. ................................. 46

       3.     Some Statements Were Facially Inactionable. ........... 48

   B.   Plaintiffs Did Not Plead Facts Supporting a "Strong Inference" of Scienter. ................................. 49

       1.     Plaintiffs Did Not Plausibly Allege Any Motive to Defraud. ................................. 50

       2.     Plaintiffs Did Not Plausibly Allege Conscious Misbehavior or Recklessness. ................................. 54

   C.   The "Controlling Person" Claims Were Correctly Dismissed. ................................. 60

III.   The District Court Correctly Denied Plaintiffs Leave to Further Amend Their Pleading. ................................. 60

CONCLUSION ................................. 62

Table of Authorities

Page(s)

Cases

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) ................................................................. 48

*Acito v. IMCERA Corp.*,
47 F.3d 47 (2d Cir. 1995) ........................................................ 45, 50, 52

*Anderson News, L.L.C. v. Am. Media, Inc.*,
2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015), *aff'd*,
899 F.3d 87 (2d Cir. 2018) ...................................................... 57

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) .......................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................. 25

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ................................................ 5, 40, 41, 60

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................. 25

*Bond Opp. Fund v. Unilab Corp.*,
87 F. App'x 772 (2d Cir. 2004) ........................................ 28

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ........................................ 57

*City of Birmingham Firemen's & Policemen's Supp. Pension
Sys. v. Ryanair Holdings PLC*,
2020 WL 2834857 (S.D.N.Y. June 1, 2020) ........................ 54

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) ........................................ 26, 61

iii

Page(s)

*Coulter v. Morgan Stanley & Co.*,
   753 F.3d 361 (2d Cir. 2014) ............................................................. 25

*Cox v. Blackberry Ltd.*,
   660 F. App'x 23 (2d Cir. 2016) ......................................................... 55

*Dalberth v. Xerox Corp.*,
   766 F.3d 172 (2d Cir. 2014) ............................................................. 32

*In re Delcath Sys., Inc. Sec. Litig.*,
   36 F. Supp. 3d 320 (S.D.N.Y. 2014) ............................................. 35, 48

*Dietrich v. Bauer*,
   76 F. Supp. 2d 312 (S.D.N.Y. 1999) .................................................. 60

*ECA, Loc. 134 IBEW Jt. Pension Tr. of Chi. v.*
   *JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .................................................... *passim*

*In re eSpeed, Inc. Sec. Litig.*,
   457 F. Supp. 2d 266 (S.D.N.Y. 2006) ................................................. 52

*Fin. Acquisition Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) ............................................................ 37

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ......................................................... 45

*Gallagher v. Abbott Labs.*,
   269 F.3d 806 (7th Cir. 2001) ............................................................ 44

*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) ................................................. 47

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) ................................................ 55

*Gray v. Wesco Aircraft Holdings, Inc.*,
   454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*,
   847 F. App'x 35 (2d Cir. 2021) .................................................... 33, 36

Page(s)

*Halperin v. eBanker USA.com, Inc.,*
295 F.3d 352 (2d Cir. 2002) ............................................... 34

*Indiana Pub. Ret. Sys. v. SAIC, Inc.,*
818 F.3d 85 (2d Cir. 2016) ................................................. 32

*Iowa Pub. Emps' Ret. Sys. v. MF Global, Ltd.,*
620 F.3d 137 (2d Cir. 2010) ............................................... 32

*Kalnit v. Eichler,*
264 F.3d 131 (2d Cir. 2001) .......................................... 50, 55

*Long Miao v. Fanhua, Inc.,*
442 F. Supp. 3d 774 (S.D.N.Y. 2020) .................................. 58

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
797 F.3d 160 (2d Cir. 2015) ............................................... 59

*In re Lululemon Sec. Litig.,*
14 F. Supp. 3d 553 (S.D.N.Y. 2014) ............................... 41, 56

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.,*
601 U.S. 257 (2024) ...................................................... 28, 32

*Matrixx Initiatives, Inc. v. Siracusano,*
563 U.S. 27 (2011) ........................................................... 40

*In re Morgan Stanley Info. Fund Sec. Litig.,*
592 F.3d 347 (2d Cir. 2010) ............................................... 27

*In re N. Telecom Ltd. Sec. Litig.,*
116 F. Supp. 2d 446 (S.D.N.Y. 2000) .................................. 52

*New England Carpenters Guar. Annuity & Pension Funds v.*
*DeCarlo,*
80 F.4th 158 (2d Cir. 2023) .......................................... 51, 55

*Noto v. 22nd Century Grp. Inc.,*
35 F.4th 95 (2d Cir. 2022) ................................................ 61

Page(s)

*In re NovaGold Res. Inc. Sec. Litig.*,
629 F. Supp. 2d 272 (S.D.N.Y. 2009)...................................................33

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ...................................................44, 50, 58

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ...............................................................44

*Omnicare, Inc. v.*
*Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ......................................................................39, 49

*Ong v. Chipotle Mexican Grill Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018)................................................37

*In re Philip Morris Int'l Inc. Sec. Litig.*,
437 F. Supp. 3d 329 (S.D.N.Y. 2020), *aff'd*,
89 F.4th 408 (2d Cir. 2023).................................................................30

*In re Philip Morris Int'l Inc. Sec. Litig.*,
89 F. 4th 408 (2d Cir. 2023).......................................................*passim*

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................................58

*Ret. Fund v. Biovail Corp.*,
615 F. Supp. 2d 218 (S.D.N.Y. 2009)................................................35

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ................................................................59

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993) ..............................................................61

*S. Cherry St., LLC v. Hennesee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009) ....................................................50, 51, 52

vi

Page(s)

*San Leandro Emergency Med. Grp. Profit Sharing Plan v.*
*Philip Morris Cos.,*
75 F.3d 801 (2d Cir. 1996) .................................................................. 41

*In re Sanofi Sec. Litig.,*
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom.*
*Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) ........................... *passim*

*Santa Fe Indus., Inc. v. Green,*
430 U.S. 462 (1977) ............................................................................ 56

*Shreiber v. Synacor,*
832 F. App'x 54 (2d Cir. 2020) ......................................................... 39

*Slayton v. Am. Exp. Co.,*
604 F.3d 758 (2d Cir. 2010) ............................................... 29, 34, 35, 36

*In re Synchrony Fin. Sec. Litig.,*
988 F.3d 157 (2d Cir. 2021) .............................................................. 40

*Teamsters Local 445 Freight Div. Pension Fund v.*
*Dynex Capital Inc.,*
531 F.3d 190 (2d Cir. 2008) .............................................................. 59

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ........................................................... 5, 49, 53, 56

*Tongue v. Sanofi,*
816 F.3d 199 (2d Cir. 2016) ................................................... 5, 25, 39

*Tyler v. Liz Claiborne, Inc.,*
814 F. Supp. 2d 323 (S.D.N.Y. 2011) ............................................... 53

*UMB Bank, N.A. v. Bristol-Myers Squibb Co.,*
No. 21 Civ. 4897 (JMF) (S.D.N.Y.) ................................................... 12

*In re Weight Watchers Int'l Inc. Sec. Litig.,*
504 F. Supp. 3d 224 (S.D.N.Y. 2020) ............................................... 60

Page(s)

## Statutes

15 U.S.C. § 77k(a) ........................................................... 14, 27

15 U.S.C. § 77l(a)(2) ..................................................... 14, 27, 28

15 U.S.C. § 77o(a) ......................................................... 23, 40

15 U.S.C. § 77v(a) ............................................................. 3

15 U.S.C. § 77z-2(i)(1) ............................... 17, 18, 19, 20, 29, 31

15 U.S.C. § 77z-2(c) ..................................................... 17, 22, 28

15 U.S.C. § 77z-2(c)(1) ................................................... 29, 36

15 U.S.C. § 78j(b) .................................................... 15, 40, 41, 56

15 U.S.C. § 78n(a) ....................................................... 14, 17, 28

15 U.S.C. § 78t(a) ........................................................ 40, 60, 61

15 U.S.C. § 78u-4(b)(1) ................................................... 26, 42

15 U.S.C. § 78u-4(b)(2) ........................................... 2, 24, 41, 49

15 U.S.C. § 78u-5(i)(1) ................................................ 29, 31, 47

15 U.S.C. § 78u-5(c) ..................................................... 17, 22, 28

15 U.S.C. § 78u-5(c)(1) ............................................ 29, 36, 46, 48

15 U.S.C. § 78u-5(c)(2) ....................................................... 46

15 U.S.C. § 78u-5(e) ......................................................... 47

15 U.S.C. § 78aa ............................................................... 3

28 U.S.C. § 1291 ............................................................... 3

28 U.S.C. § 1331 ............................................................... 3

<u>Page(s)</u>

## <u>Regulations</u>

17 C.F.R. § 229.105(a) ............................................................. 32

17 C.F.R. § 229.303(b)(2)(ii) ................................................. 32

17 C.F.R. § 240.10b-5.................................................. 15, 40, 41

17 C.F.R. § 240.10b-5(a) ....................................................... 46

17 C.F.R. § 240.10b-5(b) ................................................. 28, 41

17 C.F.R. § 240.10b-5(c) ........................................................ 46

17 C.F.R. § 240.14a-9.......................................................14, 28

## <u>Rules</u>

Fed. R. Civ. P. 9(b)......................................................26, 42, 43

Fed. R. Civ. P. 12(b)(6) ........................................................5, 25

## **INTRODUCTION**

The appellants, who were plaintiffs below, asserted claims for securities fraud and other violations of the federal securities laws on behalf of a putative class of acquirors of publicly traded contingent value rights ("CVRs") issued by defendant Bristol-Myers Squibb Company ("BMS") in its merger with Celgene Corporation. In dismissing two successive amended complaints, the district court (Furman, J.) correctly concluded that plaintiffs had failed to state an actionable claim for any securities violation.

Plaintiffs based their claims on the unsupported assertion that BMS never intended to make payment under the CVRs, which provided a contingent right to payment of $9 each if, but only if, the U.S. Food and Drug Administration ("FDA") approved applications for three different Celgene product candidates by post-merger milestone dates. The FDA ultimately approved all three applications in the midst of disruptions from the COVID-19 pandemic. But the FDA approved one of the applications, for an innovative cancer therapy called liso-cel, 36 days after its December 31, 2020 milestone date. The CVRs therefore expired without value in accordance with their terms.

According to plaintiffs' theory, BMS engineered that outcome by implementing a plan to "slow-roll" the FDA approval process in order to avoid making payment under the CVRs. In plaintiffs' telling, post-merger, mid-pandemic setbacks in the FDA approval process were too "unusual" to be anything other than evidence of that fraud – paradigmatic "fraud by hindsight." Plaintiffs have never plausibly alleged that supposedly "unusual" developments in the liso-cel approval process rendered challenged statements false or misleading when made, much less gave rise to the required "strong inference" that the defendants made the statements with fraudulent intent. 15 U.S.C. § 78u-4(b)(2).

The district court correctly applied settled law to dismiss plaintiffs' claims. This Court should affirm the judgment below in its entirety.

## <u>JURISDICTIONAL STATEMENT</u>

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs asserted claims for alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 and rules promulgated thereunder.  *See* 15 U.S.C. §§ 77v(a), 78aa.  This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a judgment entered by the United States District Court for the Southern District of New York.  JA 1196, 1198.

## ISSUES PRESENTED

1.    Did the district court correctly dismiss plaintiffs' securities claims based on a registration statement and incorporated proxy statement where the challenged disclosures were subject to a statutory safe harbor from liability because they were forward-looking and accompanied by meaningful cautionary language, 15 U.S.C. §§ 77z-2, 78u-5, and where plaintiffs did not otherwise plausibly allege that the challenged disclosures were materially false or misleading?

2.    Did the district court correctly dismiss plaintiffs' securities fraud claims against BMS and two of its senior officers based on public statements concerning an ongoing FDA review of the liso-cel application, made over the course of more than a year, where plaintiffs did not plausibly allege any actionable misstatement or plead facts supporting the required "strong inference" that any defendant acted with scienter in making one?

3.    Did the district court properly exercise its discretion in denying plaintiffs' informal request for leave to further amend their allegations, where plaintiffs did not identify additional facts or legal theories that might lead to a different result?

## STATEMENT OF THE CASE

### A.    Factual Background[1]

#### 1.    The Parties

BMS is a global biopharmaceutical company whose mission is to discover, develop, and deliver innovative medicines that help patients prevail over serious diseases.  Compl. ¶ 63.[2]  The individual defendants are, or were, BMS officers or members of the BMS board of directors. *Id.* ¶¶ 64-82.

Mangrove Partners Master Fund, Ltd. was appointed lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). JA 19.  Additional plaintiffs SM Merger/Arbitrage, L.P., SM Investors,

---

[1] This is an appeal from the district court's dismissal of plaintiffs' first and second amended complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Solely for the purpose of this appeal, therefore, well-pleaded factual allegations are assumed to be true. *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).  "The Court may also 'consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff upon which it relied in bringing the suit.'" *Id.* (quoting *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (discussing materials that may be considered).

[2] Citations to "Compl. ¶ __" refer to paragraphs in the second amended complaint, which is reproduced at JA 983-1115.

L.P., SM Investors II, L.P., and Ehab Khalil allegedly were Celgene stockholders who received CVRs in the BMS merger. Compl. ¶¶ 58-62.

### 2. The Contingent Value Rights

BMS issued the CVRs on November 20, 2019, upon the closing of its merger with Celgene, which was governed by a merger agreement they entered into on January 2, 2019. Compl. ¶¶ 121-22; JA 171-89. The merger agreement provided for consideration consisting of one share of BMS common stock, $50.00 in cash, and one CVR in exchange for each share of Celgene common stock. Compl. ¶ 121.

Each CVR conveyed a contingent right to receive payment of $9 if the FDA approved applications for three separate Celgene product candidates on or before contractual milestone dates: (i) liso-cel, an autologous cell therapy that is a treatment for certain types of lymphoma, by December 31, 2020; (ii) ozanimod, a treatment for relapsing multiple sclerosis, also by December 31, 2020; and (iii) ide-cel, an autologous cell therapy used to treat multiple myeloma, by March 31, 2021. Compl. ¶¶ 106-12. "If even *one* Milestone Drug was approved *one day* late, the CVRs would expire worthless." JA 961-62 (district court opinion) (emphasis in original). The FDA was not a party to the

6

agreement governing the CVRs and was not bound by these contractual deadlines.

On February 22, 2019, BMS and Celgene filed a joint proxy statement / prospectus seeking approval of the proposed merger from their respective stockholders. Compl. ¶ 122; *see* JA 137-404 (proxy statement). The proxy statement was deemed to be a part of a Form S-4 registration statement filed by BMS that was declared effective as of the same date. *See* Compl. ¶ 122.

Among the identified risks that were specific to the CVRs, the proxy statement warned Celgene stockholders that:

> **You may not receive any payment on the CVRs.**
>
> Your right to receive any future payment on the CVRs will be contingent upon the achievement of certain agreed upon U.S. regulatory milestones within the time periods specified in the CVR agreement. If the CVR milestone . . . is not achieved for any reason within the time periods specified in the CVR agreement, no payment will be made under the CVRs, and the CVRs will expire valueless. Accordingly, the value, if any, of the CVRs is speculative, and the CVRs may ultimately have no value. . . .

JA 201. The proxy statement also disclosed BMS's estimate, in evaluating the merger consideration, of only a 45% probability that "the three FDA approvals required to trigger the $9 payment under the CVR agreement" would be obtained in time. Compl. ¶ 222 (quoting proxy

statement); *see* JA 308. Elsewhere, the proxy statement included an estimated, risk-weighted present value for each CVR of $3.75 after taking into account "the probability of achieving all three necessary approvals[.]" JA 219.

With full knowledge of the CVRs and their payment structure, BMS and Celgene stockholders approved the merger at separate meetings held on April 12, 2019. Compl. ¶ 126. The CVRs were issued months later, on November 20, 2019, when the merger closed. *Id.* ¶ 130.

On the closing date, BMS entered into the Contingent Value Rights Agreement with Equiniti Trust Company, as trustee ("<u>CVR Agreement</u>"), setting forth the terms of the CVRs. *Id.* ¶¶ 24, 130. Once issued, the CVRs traded on the New York Stock Exchange until they were delisted after the CVR Agreement automatically terminated, in accordance with its terms, on January 1, 2021. *Id.* ¶¶ 57, 184.

### 3.   The Liso-Cel Application

Plaintiffs alleged that BMS never intended to make payment on the CVRs or to use "diligent efforts" to obtain FDA approval of the applications by the contractual milestone dates, as the CVR Agreement required. Compl. ¶ 124. They contended that BMS instead intended to

8

"slow roll the FDA application process . . . so that it would miss at least one FDA milestone and avoid making the $9 CVR payment worth $6.4 billion." *Id.* ¶¶ 223, 232-79.

The central focus of this unfounded assertion was the biologics license application for FDA approval of liso-cel. Compl. ¶ 17. Celgene took over the development of liso-cel when it acquired Juno Therapeutics in 2018. *Id.* ¶ 86. Celgene then oversaw the liso-cel application process, and related communications with the FDA, up through the closing of its merger with BMS. *Id.* ¶ 130. As a result, Celgene (not BMS) filed the first two of three modules for the rolling application. *Id.* ¶ 127. Then, "[o]n December 18, 2019, less than one month after the Merger, BMS submitted the final . . . portion of the BLA, titled 'Chemistry, Manufacturing, and Controls' ('CMC') to the FDA." JA 962 (district court opinion); *see* Compl. ¶ 131.

In February 2020, the FDA accepted the liso-cel application and granted it "Priority Review." Compl. ¶ 134. This meant the FDA's "target approval date" was August 17, 2020 under the Prescription Drug User Fee Act of 1992, as amended ("PDUFA") – four-and-a-half months before the liso-cel milestone date under the CVR Agreement. *Id.*; *see*

9

JA 962-63. Securities analysts declared this "'another positive step' for CVR holders, because [the schedule] 'could even allow for a three-month delay'" and still permit liso-cel to be approved in time. Compl. ¶ 134.

Then, on March 23, 2020 ("shortly after the start of the COVID-19 pandemic"), the FDA requested that BMS supplement its CMC submission with studies underlying the tests used in the production of liso-cel's viral vector component, and BMS provided the requested information in response. JA 963; *see* Compl. ¶ 138. Weeks later, the FDA informed BMS that it was deeming the response to be a "major amendment" to the application, which "automatically triggered [a] three-month extension of [the PDUFA date]" until November 16, 2020 (still "weeks before" the December 31, 2020 milestone date). Compl. ¶¶ 139-40. BMS promptly disclosed this development. *Id.* ¶ 241.

As part of the approval process, the FDA required inspections of two manufacturing facilities used for production of liso-cel: a Juno Therapeutics facility in Bothell, Washington and a viral vector production facility operated by a subsidiary of Lonza AG in Houston, Texas. Compl. ¶ 141. The FDA required both facilities to be inspected

before it would approve liso-cel. The Lonza facility had not been inspected by the FDA before. *Id.* ¶ 153.

Pandemic travel restrictions delayed the inspections until October 2020 for the Juno facility and early December 2020 for the Lonza facility, the latter of these only weeks before the liso-cel milestone date. *Id.* ¶¶ 142-43, 151, 154. On November 16, 2020, the deferred PDUFA date, BMS disclosed that the FDA was "deferring action" on the liso-cel application because the agency had not been able to conduct its inspection of the Lonza facility "due to travel restrictions related to the COVID-19 pandemic." *Id.* ¶ 276; *see* JA 958 (press release).[3]

Plaintiffs alleged that BMS failed to prepare the liso-cel manufacturing facilities adequately for the FDA inspections. Compl. ¶¶ 141-66. But plaintiffs admit both inspections were completed by the FDA, and that BMS responded to the FDA's post-inspection observations, *before* the December 31, 2020 milestone date. *Id.* ¶¶ 151, 166.

---

[3] *See Resiliency Roadmap for FDA Inspectional Oversight*, FDA (May 2021) (recounting pandemic restrictions on FDA inspections) (available at: https://www.fda.gov/media/148197/download).

Ultimately, the FDA did not issue a decision by the liso-cel milestone date. On January 1, 2021, BMS issued a press release reporting that the milestone date had passed without a decision and that the CVR Agreement therefore had terminated by its terms. Compl. ¶ 184. Five weeks later, on February 5, 2021, the FDA approved the liso-cel application. *Id.* ¶¶ 53, 288.[4]

**B.    The Proceedings Below**

Several related actions were filed in the U.S. District Court for the Southern District of New York asserting securities claims against BMS and its officers or directors on behalf of alleged classes of CVR acquirors. The actions were assigned to U.S. District Judge Jesse M. Furman, who already was presiding over a separate action alleging that BMS had breached the CVR Agreement.[5] On December 22, 2021, the district court

---

[4] The FDA approved the ozanimod and ide-cel applications before their respective milestone dates, December 31, 2020 and March 31, 2021. Compl. ¶¶ 129-30, 191.

[5] In that action, which remains pending, an alleged successor trustee under the CVR Agreement sued BMS for allegedly failing to use "diligent efforts" to obtain FDA approval of liso-cel by its milestone date. *UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 21 Civ. 4897 (JMF) (S.D.N.Y.).

12

appointed Mangrove Partners as lead plaintiff in the consolidated securities action. JA 19.

Plaintiffs filed their first amended complaint in February 2022. JA 20. In an opinion and order entered on March 1, 2023, the district court granted the defendants' motion to dismiss that pleading in its entirety. JA 960. In April 2023, plaintiffs filed their second amended complaint. JA 983. In an opinion and order entered on February 29, 2024, the district court again granted the defendants' motion to dismiss, but without further leave to amend. JA 1180. Judgment was entered on the same date. JA 1196.

### 1.  Plaintiffs' Claims[6]

Plaintiffs asserted securities claims on behalf of a putative class composed of all persons who purchased or otherwise acquired CVRs during an alleged "class period" from November 20, 2019 through December 31, 2020 (*see* JA 986; Compl. ¶ 307) based on two categories of alleged misstatements: (i) disclosures in the merger proxy statement dated February 22, 2019, which was incorporated in a Form S-4

---

[6] Plaintiffs asserted the same claims in both the first and the second amended complaints. JA 28-132, JA 983-1115. Unless specifically noted, citations are to paragraphs in the second amended complaint.

registration statement effective on that date; and (ii) disclosures made in periodic reports, press releases, earnings calls, and investor presentations during the period from December 8, 2019 (just after the merger closing), through November 16, 2020, the PDUFA date for the liso-cel application.

In the first category, plaintiffs asserted claims under sections 11(a), 12(a)(2), and 15(a) of the Securities Act of 1933 and under sections 14(a) and 20(a) of the Securities Exchange Act of 1934, against BMS and all but one of the individual defendants, based on a handful of CVR-related disclosures in the proxy statement.[7] The challenged disclosures included: that liso-cel and other Celgene product candidates were "expected to launch in 2019 and 2020"; that BMS management estimated a 45% probability of meeting all the conditions to payment under the CVRs; that BMS would agree in the CVR Agreement to use "diligent efforts" to

---

[7] The claim under Exchange Act § 14(a) (and Rule 14a-9) was asserted against BMS and the members of its board of directors. Compl. ¶¶ 67-78, 320-25. The claim under Securities Act § 11(a) was asserted against the same defendants and former BMS officers Charles Bancroft and Karen Santiago. *Id.* ¶¶ 67-81, 333-41. BMS was the sole defendant for the claim under Securities Act § 12(a)(2). *Id.* ¶¶ 342-52. Samit Hirawat, M.D., who is BMS's chief medical officer, was not named a defendant in any of these claims.

obtain timely FDA approval for the three applications; and that "the value, if any, of the CVRs is speculative, and the CVRs may ultimately have no value." Compl. ¶¶ 222-28. Plaintiffs alleged all of these statements were false or misleading because BMS always intended to avoid payment under the CVRs by "slow rolling" the FDA approval process. *Id.*

In the second category, plaintiffs asserted claims under sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5, against BMS, its former chief executive officer Giovanni Caforio, M.D., and its chief medical officer Samit Hirawat, M.D., based on statements made in periodic reports, press releases, earnings calls, congressional testimony, and investor presentations between December 8, 2019 and November 16, 2020. Compl. ¶¶ 232-79.[8]

The challenged statements fell into three categories: (i) updates concerning liso-cel and the other CVR milestone therapies, Compl ¶¶ 239, 241, 245, 247, 254, 259, 263, 267, 269, 273, 276;

---

[8] Plaintiffs originally included BMS's chief financial officer David Elkins as a defendant in these claims. However, after the district court dismissed the first amended complaint, *see infra* at 17-19, Mr.Elkins was dropped as a defendant. JA 10; JA 119.

(ii) forward-looking statements about the applications, *id.* ¶¶ 233, 235, 237, 245, 249, 251, 256, 270; and (iii) statements of opinion about the prospects for FDA approval and BMS's working relationship with the FDA, *id.* ¶¶ 252, 257, 261, 265, 274, 277.

Plaintiffs did not allege that any of the challenged statements was factually inaccurate; indeed, their own allegations demonstrated the truth of many of them. *See infra* at 39-43. But according to plaintiffs, all of the statements were false or misleading because they failed to disclose BMS's alleged plan to "slow-roll" the FDA approval "process for [l]iso-cel . . . so that they would miss at least one FDA milestone and avoid making the $9 CVR payment." Compl. ¶¶ 223, 226, 229, 234, 236, 238, 240, 243, 246, 248, 250, 253, 255, 258, 260, 262, 264, 266, 268, 271, 275, 278.

Plaintiffs alleged that the market price for CVRs declined between May 6, 2020 and December 31, 2020 when BMS reported "various delays in the [FDA] approval process" for liso-cel; then, when the liso-cel milestone date passed without an FDA approval decision, "the remaining artificial inflation dissipated." Compl. ¶¶ 296-301.

## 2. Dismissal of the First Amended Complaint

In its opinion and order on March 1, 2023, the district court granted defendants' motion to dismiss the first amended complaint in its entirety. *See* JA 960-82.

With respect to plaintiffs' claims based on the merger proxy statement and registration statement under sections 11, 12(a)(2), and 15 of the Securities Act and sections 14(a) and 20(a) of the Exchange Act, the court determined the challenged statements were protected against liability by the statutory safe harbor for forward-looking statements, 15 U.S.C. §§ 77z-2(c), 78u-5(c), because they were forward-looking and were accompanied by meaningful cautionary language. JA 977-981.

"[A]ll concern[ed] either 'future economic performance' or 'the plans and objectives of management for future operations, 15 U.S.C. §§ 77z-2(i)(1)(B)-(C)[,]" and courts "have consistently held that 'statements about FDA approval[,]'" such as those at issue, "'are classically forward-looking' because 'they address what defendants expect to occur in the future.'" JA 978 (citation omitted).

The risks the proxy statement warned about included that: investors "may not receive any payment on the CVRs"; "the value, if any,

17

of the CVRs, is speculative, and the CVRs may ultimately have no value";
and "the probability of BMS meeting the Milestone Deadlines was only
45%." JA 980 (quoting Proxy Statement at 50, 80, 157). These warnings,
the court found, were "'extensive and specific,' substantive, and tailored
to the risks involved." *Id.* (citation omitted).

The district court rejected plaintiffs' argument that their
allegations that BMS knew the forward-looking statements were false
exempted their claims from the safe harbor, finding that argument to be
"contrary to the disjunctive nature of the safe harbor elements[,]" which
provide that "*either* cautionary language *or* an absence of knowledge is
alone sufficient to trigger the safe harbor." JA 980-81 (cleaned up).

As for plaintiffs' securities fraud claims, the court concluded that
the complaint failed to plead facts supporting the required "strong
inference" that BMS or the officer defendants acted with scienter in
making any challenged statement. *See* JA 966-76. The court rejected
plaintiffs' "motive and opportunity" allegations because plaintiffs had not
alleged that the individual defendants "'benefitted in some concrete and
personal way from the purported fraud.'" JA 968 (citation omitted).

18

Nor was the court convinced that plaintiffs had pleaded a "strong inference" of scienter based on "conscious misbehavior or recklessness." JA 971-75. Allegations concerning purported "missteps" in the FDA approval process were not connected to knowledge by any of the defendants that any challenged statement was false. JA 971-72. The alleged "setbacks" were, at most, "attributable to corporate (or government agency) mismanagement, which does not, by itself, give rise to a strong inference of scienter." JA 975 (citation omitted).

The court concluded that all of the securities claims based on the registration statement and proxy statement should be dismissed with prejudice because further amendment was "unlikely to be productive." JA 982. However, the district court permitted plaintiffs a further opportunity to amend their securities fraud claims, even though "Plaintiffs [did] not request leave to amend[.]" *Id.*

### 3. Dismissal of the Second Amended Complaint

Plaintiffs filed their second amended complaint in April 2023, repeating their theory of securities fraud against BMS, its chief executive officer Dr. Caforio, and its chief medical officer Dr. Hirawat based on an alleged, undisclosed plan by BMS to "slow-roll" the FDA approval process

19

for liso-cel.  JA 23.  Those defendants filed another motion to dismiss. JA 24.

In its opinion and order entered on February 29, 2024, the district court dismissed the second amended complaint in its entirety and with prejudice.  The opinion focused on plaintiffs' attempts to address the deficiencies in their scienter allegations.  SPA 1-16.  With respect to motive and opportunity, the court concluded that plaintiffs "still fail[ed] to allege that the individual Defendants 'benefitted in some concrete and personal way from the purported fraud.'"  SPA 8 (quoting *JP Morgan Chase*, 553 F.3d at 198).  Plaintiffs' new allegations "add[ed] little to what Plaintiffs previously argued, namely that the individual Defendants had a motive to keep BMS's stock price high."  SPA 9.  In addition to rejecting such commonly shared motives as insufficient, the district court concluded that plaintiffs' "slow roll" theory "defie[d] economic reason," because any intentional effort to delay FDA approval undoubtedly would have triggered a lawsuit for breach of the CVR Agreement to enforce the $6.4 billion payment obligation that defendants allegedly were attempting to avoid.  *Id.*

The court also concluded that plaintiffs' allegations of conscious misbehavior still failed to support the required "strong inference" of scienter. SPA 10-14. Allegations that Dr. Caforio and Dr. Hirawat sat "on committees with oversight authority relating to the drug approval process and the Celgene integration" and also allegedly knew about communications with the FDA, did not suggest their knowledge that any challenged statement was false. SPA 10-11. Nor could that inference plausibly arise from new allegations attributed to an unidentified "expert" and three low-level confidential witnesses. SPA 12-13. None of the confidential witnesses was alleged to have had any contact with the individual defendants. SPA 13. A purported statistical analysis comparing the FDA approval time for liso-cel and other CAR-T products also said nothing about the defendants' "actions and knowledge." SPA 13-14.

After concluding that the securities fraud claims should be dismissed again for failure to plead scienter, the district court denied plaintiffs' informal request, in a footnote to their opposition brief, for leave to further amend their complaint. SPA 15. Judgment was entered in favor of the defendants. SPA 17-18. This appeal followed.

## SUMMARY OF ARGUMENT

The judgment below should be affirmed in its entirety.

1.     a.     The district court correctly dismissed plaintiffs' claims based on the February 2019 merger proxy statement and registration statement.  The court was correct in finding that challenged disclosures were both forward-looking and accompanied by meaningful cautionary language, qualifying them for protection against liability under the safe harbor for forward-looking statements.  *See* 15 U.S.C. §§ 77z-2(c), 78u-5(c).  All of the statements concerned a future FDA approval process for the milestone therapies or BMS's future obligations under the CVR Agreement.  The proxy statement identified the statements as forward-looking and included "meaningful" warnings that the FDA approval process was uncertain and that the CVRs would expire valueless if, "for any reason," any one of the three milestones was not met.  Plaintiffs alleged no contemporaneous fact to support their contention that the safe harbor was inapplicable based on "actual knowledge" of falsity.  That argument misconstrues the disjunctive provisions of the safe harbor, in any event.

b.    Dismissal of the proxy statement claims also can and should be affirmed on the independent ground that plaintiffs failed to plausibly allege that any of the statements was false or misleading when made. Plaintiffs alleged a plan to "slow-roll" FDA approval of liso-cel, but there were no contemporaneous facts alleged to support that allegation at any time, much less as of the date of the proxy statement and the registration statement it was part of.  Plaintiffs also failed to plead facts necessary to sue on the challenged statements as opinions.

c.    The district court correctly dismissed plaintiffs' "controlling person" claims under section 15(a) of the Securities Act and, to the extent applicable, section 20(a) of the Exchange Act based on plaintiffs' failure to plead any primary violation or any individual's culpable participation in one.

2.    The district court's dismissal of plaintiffs' securities fraud claims should be affirmed for several reasons, including but not limited to the reasons discussed by the district court.

a.    Plaintiffs did not plead any actionable misstatement.  They did not plausibly allege any challenged statement was false or misleading, because there were no contemporaneous factual allegations

23

to support the unfounded assertion that BMS intentionally "slow roll[ed]" the FDA approval process to avoid payment under the CVRs. Many challenged statements were forward-looking statements protected by the statutory safe harbor, and others were inactionable puffery (or opinions).

b. Moreover, as the district court correctly held, plaintiffs did not meet their heightened burden to allege facts giving rise to a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). Plaintiffs made no attempt to connect allegations about the FDA approval process for liso-cel to the challenged statements themselves, much less any defendant's state of mind in making them. Alleged setbacks in the FDA process, occurring over the course of more than a year while the FDA also was contending with the COVID-19 pandemic, do not support a compelling inference of fraud, as opposed to other inferences.

c. The district court correctly dismissed plaintiffs' "controlling person" claims under section 20(a) of the Exchange Act, based on plaintiffs' failure to plead any primary violation or any individual's culpable participation in one.

3. The district court appropriately exercised its discretion in declining plaintiffs' informal request for leave to amend their complaint

24

for a third time. Plaintiffs did not formally request leave, nor did they explain how they might replead their claims to avoid dismissal again.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court decision dismissing a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F. 4th 408, 416 (2d Cir. 2023); *Tongue*, 816 F.3d at 209. The Court "may affirm on any basis supported by the record." *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014).

To avoid dismissal under Rule 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *ECA, Loc. 134 IBEW Jt. Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and "naked assertion[s]" are insufficient. *Id.*

"[A] complaint sounding in fraud also 'must state with particularity the circumstances constituting fraud,' Fed. R. Civ. P. 9(b), and under the PSLRA, it must 'specify each statement alleged to have been misleading[] [and] the reason . . . why the statement is misleading,' and 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' 15 U.S.C. § 78u-4(b)(1), (2)(A)." *Philip Morris*, 89 F.4th at 416-17.

This Court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of motion for leave to amend securities complaint after one amendment where plaintiffs "identified no additional facts or legal theories" they might assert if permitted to amend).

26

## ARGUMENT

### I. The District Court Correctly Dismissed Plaintiffs' Claims Based on the Registration Statement and Proxy Statement.

Plaintiffs devote scant attention in their opening brief to the district court's dismissal of their claims based on the February 22, 2019 registration statement and incorporated proxy statement / prospectus. Pls. Br. at 51-57. The ruling should be affirmed for the reasons correctly identified by the district court and for additional reasons raised below and discussed again here.

A plaintiff asserting a claim under section 11(a) of the Securities Act must plausibly allege that, at the time it became effective, a registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).

Section 12(a)(2) of the Securities Act "provides similar redress where the securities at issue were sold using prospectuses or oral communications that contain material misstatements or omissions," *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010), but the provision does not include a cause of action based on pure

omissions, 15 U.S.C. § 77l(a)(2). *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264-65 (2024) (holding there is no right of action for "pure omissions" under Rule 10b-5(b), which is phrased similarly to Securities Act § 12(a)(2)).

To recover under Exchange Act § 14(a) and Rule 14a-9 thereunder, 15 U.S.C. § 78n; 17 C.F.R. § 240.14a-9, a plaintiff must show, *inter alia*, that "a proxy statement contained a material misrepresentation or omission." *Bond Opp. Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (*per curiam*).

With respect to all of these claims, the PSLRA amended the federal securities laws to provide a safe harbor from liability for forward-looking statements. 15 U.S.C. §§ 77z-2(c), 78u-5(c).

## A. The PSLRA Safe Harbor Applies.

The district court correctly concluded that the challenged statements in the merger proxy statement and registration statement were protected against liability by the statutory safe harbor for forward-looking statements. The safe harbor bars securities liability for claims based on any forward-looking statement that is "accompanied by meaningful cautionary language," that is made without "actual

knowledge that it was false or misleading," *or* that is immaterial. 15 U.S.C. § 77z-2(c)(1); 15 U.S.C. § 78u-5(c)(1); *see Slayton v. Am. Exp. Co.*, 604 F.3d 758, 772-73 (2d Cir. 2010) (discussing safe harbor). These requirements were met here.

## 1. The Statements Were Forward-Looking.

As the district court correctly recognized, the challenged proxy statement disclosures were forward-looking statements within the meaning of the safe harbor. Compl. ¶¶ 222-27; *see* 15 U.S.C. §§ 77z-2(i)(1), 78u-5(i)(1) (definition).[9] The challenged statements were:

- that "Celgene's key late-stage product candidates," including liso-cel, were "expected to launch in 2019 and 2020," Compl. ¶ 222;

- that BMS management estimated at 45% the probability "of achieving the three FDA approvals required to trigger the $9 payment under the CVR Agreement," *id.*;

- that "[e]ach CVR represents the right to receive a one-time cash payment of $9.00 if the [] FDA, approves, by the [Milestones]," *id.* ¶ 224 (brackets in original);

- that the CVR Agreement to be entered at the closing would include an agreement by BMS "to use 'diligent efforts' to achieve the CVR milestone," *id.* ¶ 225; and

---

[9] In the first amended complaint, these allegations appeared in paragraphs 158-64. JA 88-90.

- that "the value, if any, of the CVRs is speculative, and the CVRs may ultimately have no value," *id.* ¶ 227; *see also id.* ¶ 228.[10]

"[C]ourts . . . have consistently held that 'statements about FDA approval,'" like those at issue here, "'are classically forward-looking' because 'they address what defendants expect to occur in the future.'" JA 978 (district court opinion) (quoting *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 535 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016)).

In this case, all were "statements whose truth cannot be ascertained until sometime after they are made." *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 354-55 (S.D.N.Y. 2020) (internal quotations omitted), *aff'd*, 89 F.4th 408 (2d Cir. 2023). Each was "a statement containing a projection of revenues, income . . . , or other financial items;" (ii) "a statement of the plans of management for future

---

[10] Plaintiffs further alleged that a Guggenheim Partners analyst report dated November 7, 2019 falsely stated that BMS "is highly motivated to pay out the CVR . . . ." Compl. ¶ 230; *see also* JA 91 (first am. compl.). But an analyst report is not a "registration statement," a "prospectus," or a solicitation of proxies, and it therefore could not be a basis for liability under any of the provisions invoked in that section of the complaint. On appeal, plaintiffs have abandoned any claim based on the report. Pls. Br. at 51 n.12.

30

operations, including plans or objectives relating to the products or services of the issuer[]," or (iii) a "statement of the assumptions underlying or relating to" the foregoing. 15 U.S.C. §§ 77z-2(i)(1)(A), (B), (D); 15 U.S.C. §§ 78u-5(i)(1)(A), (B), (D).

The proxy statement itself identified the statements as forward-looking and warned they were "*only predictions* and involve known and unknown risks and uncertainties" that were "based upon management's then-current views and assumptions regarding future events and operating performance . . . ." JA 230-31 (emphasis added). In addition, many of the challenged statements used language that was forward-looking. Compl. ¶¶ 222, 224-25, 227-28; *see Philip Morris*, 89 F.4th at 428 (noting "many [] statements were worded with *quintessentially* forward-looking language").

Unable to refute any of these points, plaintiffs argue the safe harbor does not apply because their claims were based on alleged "omissions," or, alternatively, that the challenged statements concerned present facts. Pls. Br. at 51-54. Neither argument is viable.

Plaintiffs never argued below that their proxy statement claims were based on alleged omissions, and they therefore waived that

31

argument. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 184 (2d Cir. 2014); *see* Pls. Opp. Mem. dated May 26, 2022 [ECF No. 105] at 31-33. Even if plaintiffs had raised this belated argument, it would have failed because they did not allege any contemporaneous fact to support their unfounded theory of a secret plan to "slow-roll" the FDA approval process and avoid payment under the CVRs. *See* Compl. ¶¶ 222-29; *see also* JA 88-90 (allegations in first amended complaint). The failure to plead "an omission of *present* fact" is fatal. *Iowa Pub. Emps' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 142 (2d Cir. 2010) (emphasis added).[11]

Separately, but similarly, the factually untethered contention that BMS had an undisclosed intention to avoid payment for the CVRs does

---

[11] The complaint did not allege any "pure omission." *Macquarie*, 601 U.S. at 264. There could be no such claim based on an undisclosed "known trend or uncertainty" under Item 303 of Regulation S-K given plaintiffs' failure to allege any contemporaneous fact to support their "slow roll" theory. *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (claim based on Item 303 requires actual knowledge); *see* 17 C.F.R. § 229.303(b)(2)(ii). Nor would such a claim find support in Item 105 of Regulation S-K, requiring disclosure of the "most significant factors that make an investment . . . risky," both for the same reason and given the district court's recognition that CVR-related risk disclosures were "extensive and specific" and "substantive, and tailored to the risks involved." JA 980; 17 C.F.R. § 229.105(a); *see infra* at 33-37 (discussing cautionary language and actual knowledge prongs of safe harbor).

not convert forward-looking statements into misstatements of present fact. Pls. Br. at 53. Indeed, this argument "conflates the question of whether a statement is forward-looking with the applicability of the safe harbor's 'actual knowledge' prong," which, as the district court recognized, would impermissibly "rip a large hole" in the safe harbor. JA 978-79; *see Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 390 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021); *In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 292 (S.D.N.Y. 2009) (rejecting assertion that cost projections were statements of present fact).

## 2. The Statements Were Accompanied by Meaningful Cautionary Language.

The district court also correctly held that the challenged statements were accompanied by meaningful cautionary language, therefore qualifying them for safe harbor protection. JA 979-81. The complaint itself made clear that the proxy statement warned of risks associated with the CVRs, including that the milestones might not be met and the CVRs "may ultimately have no value." Compl. ¶ 227; *see* JA 201 (if CVR milestones are "not achieved *for any reason* within the time periods specified . . . no payment will be made under the CVRs, and the CVRs will expire valueless.") (emphasis added).

Cautionary language is "meaningful" where it "convey[s]" substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements." *Slayton*, 604 F.3d at 771. It must "expressly warn of" and "directly relate to the risk" that allegedly "brought about plaintiffs' loss." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002).

In this case, the risk factor that plaintiffs themselves quoted in the complaint "explicitly identifie[d] the salient risk," *Sanofi*, 87 F. Supp. 3d at 536, namely, that the CVRs would expire valueless if the FDA did not approve any of the three applications in time "for any reason." JA 201. Elsewhere, the proxy statement warned that "the timing and probability of a payment pursuant to the contingent value right consideration" was "subject to significant uncertainties" beyond BMS's control, including those associated with "the content and timing of decisions made by the FDA and other regulatory authorities," JA 231, and included BMS management's estimate that there was only a 45% probability that all of the contingencies to payment under the CVRs would be met, Compl. ¶ 222.

34

The cautionary "statements conveyed substantive information about the risk that ultimately materialized[.]" *Sanofi*, 87 F. Supp. 3d at 536.[12] The district court therefore correctly held that the risk disclosures were "'extensive and specific,' substantive, and tailored to the risks involved." JA 980 (quoting *Slayton*, 604 F.3d at 772-73).

Plaintiffs' principal response is that the proxy statement failed to warn that the defendants "planned to deliberately delay the FDA application process." Pls. Br. at 55. But in addition to plaintiffs' failure to allege a single contemporaneous fact to support that assertion, the argument again confuses "distinct provisions of the PSLRA's safe harbor – this time, the actual knowledge and meaningful cautionary language prongs of the statute." JA 980. As the district court recognized, a securities plaintiff cannot evade the safe harbor merely by alleging "actual knowledge of falsity," because such a reading would conflict with

---

[12] *See In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 334 (S.D.N.Y. 2014) (warning "adequately disclosed the possibility of a risk that materialized when the FDA denied approval"); *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 232-33 (S.D.N.Y. 2009) (warning concerning "the difficulty of predicting" regulatory approvals satisfied safe harbor).

the "disjunctive nature of the safe harbor elements." JA 980-81 (quoting *Gray*, 454 F. Supp. 3d at 394).

"*Either* cautionary language *or* an absence of knowledge is alone sufficient to trigger the safe harbor." *Gray*, 454 F. Supp. 3d at 395 (emphasis added); *see Slayton*, 604 F.3d at 766. The meaningful cautionary language provided in the proxy statement is sufficient, by itself, for the safe harbor to apply.

### 3. There Were No Plausible Allegations of Actual Knowledge of Falsity.

The proxy statement and registration statement claims also were subject to dismissal under the "actual knowledge" prong of the safe harbor (an issue the district court did not need to reach). *See* 15 U.S.C. §§ 77z-2(c)(1), 78u-5(c)(1). There was no allegation of any contemporaneous fact to support plaintiffs' assertion that BMS and the individual defendants knew BMS "was not going to use diligent efforts to meet" the CVR milestones and "intended to slow-roll the FDA application process . . . ." Compl. ¶¶ 223, 226, 229.

Plaintiffs' attempt to reverse-engineer such knowledge based on setbacks in the FDA approval process occurring more than a year later, Compl. ¶¶ 139-66, was paradigmatic "fraud-by-hindsight." *Philip Morris*,

36

89 F.4th at 429. Plaintiffs' own allegations showed that BMS responded to setbacks, when they arose, by addressing FDA concerns quickly so that liso-cel still might be approved by the applicable milestone date. *See, e.g.*, Compl. ¶¶ 138, 151, 152, 154.

Hindsight critiques attributed to an unidentified "FDA Biologics Expert" do not alter the analysis. Compl. ¶¶ 133-35, 146-54, 158-66. Expert "opinions cannot substitute for facts under the PSLRA." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)); *see Ong v. Chipotle Mexican Grill Inc.*, 294 F. Supp. 3d 199, 223-24 (S.D.N.Y. 2018) (refusing to consider opinions of food safety expert in deciding motion to dismiss securities fraud complaint).

## B. Plaintiffs Otherwise Failed to Plead Falsity.

Plaintiffs also failed to plausibly allege that the registration statement or proxy statement contained any actionable misstatement, which is another ground for affirmance.

*First*, there is no basis to infer that the challenged disclosures were false. There was no allegation raising any doubt that at the time of the

37

proxy statement, Celgene and BMS, in fact, expected key Celgene product candidates (including liso-cel) to "launch in 2019 and 2020" or that BMS management had estimated the probability of meeting CVR contingencies to be 45%. Compl. ¶ 222. Similarly, the future CVR Agreement did include the "diligent efforts" covenant described in the proxy statement, *id.* ¶ 225, and the proxy statement appropriately warned that "the CVRs may ultimately have no value" (depending on developments in the future FDA approval process). *Id.* ¶ 227.

Plaintiffs' only claim to the falsity of these statements was their sweeping allegation that the statements "omitted that [BMS] intended to slow-roll the FDA application process" and did not disclose BMS allegedly "was not going to use diligent efforts" to meet the CVR milestones. *Id.* ¶¶ 223, 226, 229. As already discussed, there were no facts alleged to support those contentions. The separate assertion that the statements "misstated the status of the applications for FDA approval," *see id.*, cannot be reconciled with plaintiffs' acknowledgement that the liso-cel and ide-cel applications were not even *filed* until long *after* the proxy statement. *Id.* ¶¶ 127, 130-31.

*Second*, several of the challenged statements were opinions, Compl. ¶¶ 222, 227-28, either because they were "expectations and projections for the future," *Shreiber v. Synacor*, 832 F. App'x 54, 57 (2d Cir. 2020), or because they expressed "an 'inherently subjective assessment[.]'" *Philip Morris*, 89 F.4th at 418 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)).

Under *Omnicare*, those statements were not actionable unless "either 'the speaker did not hold the belief she professed' or 'the supporting fact[s] she supplied were untrue.'" *Tongue*, 816 F.3d at 210 (quoting *Omnicare*, 575 U.S. at 186); *see Philip Morris*, 89 F.4th at 419-20 (opinion statement "is actionable when it implies the absence of contrary *facts* and the speaker knows or reasonably should know of different material *facts* that were omitted") (cleaned up).

Plaintiffs did not plausibly allege a claim under either approach. Their conclusory assertions, based entirely on events long after the challenged disclosures, that BMS planned not to use "diligent efforts" and "intended to slow-roll the FDA application process" were not sufficient. Compl. ¶ 223; *see Philip Morris*, 89. F.4th at 429 (rejecting challenge to

39

"positive projections about growth" based on impermissible "fraud-by-hindsight approach").

## C. The "Controlling Person" Claims Also Were Correctly Dismissed.

The district court correctly dismissed the "controlling person" claims because of plaintiffs' failure to plead a primary violation. JA 981; *see Bristol-Myers Squibb Co.*, 28 F.4th at 356-57; *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 173-74 (2d Cir. 2021). The claims also were subject to dismissal because plaintiffs did not plausibly allege any individual defendant was a "culpable participant." *ATSI*, 493 F.3d at 99; *see* 15 U.S.C. §§ 77o(a), 78t(a).

## II. The District Court Correctly Dismissed Plaintiffs' Claims of Securities Fraud.

This Court also should affirm the district court's dismissal of plaintiffs' claims of securities fraud against BMS and two senior officers, Dr. Caforio and Dr. Hirawat. SPA 6-15; JA 966-76.

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx*

40

*Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011); *see* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b).

Plaintiffs did not plead any actionable misstatement and fell far short of meeting the heightened standard for pleading fraudulent intent under the PSLRA. JA 966-76; SPA 1-16; *see* 15 U.S.C. § 78u-4(b)(2); *ATSI*, 493 F.3d at 99.

## A. Plaintiffs Did Not Allege Any Actionable Misstatement or Omission.

Plaintiffs' brief avoids discussion of the statements they contended were fraudulent, which for the most part were anodyne remarks or general disclosures about the ongoing FDA approval process for liso-cel made over the course of more than a year. Compl. ¶¶ 233-77. None of the statements was false or misleading when it was made or was otherwise actionable.

### 1. Plaintiffs Failed to Allege Falsity.

"A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made.*" *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (emphasis in original) (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris*

*Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996)). The PSLRA enforces this rule by requiring a securities fraud plaintiff to "specify each statement alleged to have been misleading" and the reason "the statement is misleading." 15 U.S.C. § 78u-4(b)(1); *see also* Fed. R. Civ. P. 9(b) (pleading specificity for allegations of fraud).

Plaintiffs did not, and could not, specify how the statements they challenged were false or misleading. To the contrary, many of them were plainly accurate. For example, at a conference on December 8, 2019, and on a webcast the next day, Dr. Hirawat allegedly "reiterated plans" for BMS to file the liso-cel application by year-end, Compl. ¶¶ 233, 235, which the complaint admits BMS did, *id.* ¶ 237. Similarly, at a congressional hearing on September 30, 2020, Dr. Caforio allegedly testified that the FDA had accepted both the liso-cel and ide-cel applications and granted them "priority review," *id.* ¶ 267, which the complaint acknowledges is precisely what occurred, *id.* ¶¶ 134, 188-91.

Similarly, plaintiffs never alleged facts to suggest that BMS was not continuing "to advance [its] regulatory filings" when it said it was, *id.* ¶ 239; that the FDA had not asked "specific questions" that required BMS to provide "more data," as Dr. Hirawat explained during an

42

earnings call, *id.* ¶ 251; that November 16, 2020 was not the deferred PDUFA date for liso-cel following the FDA's "major amendment" letter, as BMS said it was, *id.* ¶¶ 247, 251, 254, 256-57, 263; or that COVID-19 was not an external factor that might "delay the timing of the FDA's approval decisions," as the defendants warned in repeated public statements, *id.* ¶¶ 254, 257, 261, 270.

Rather than alleging contemporaneous contrary facts, plaintiffs fell back, once again, on their blanket allegation that the challenged statements were false because they failed to disclose an alleged plan to "slow-roll the FDA application process" so that BMS could "avoid making the $6.4 billion CVR payment." Compl. ¶¶ 234, 236, 238, 240, 243, 246, 248, 250, 253, 255, 256, 258, 260, 262, 264, 266, 268, 271, 275, 278. That is not sufficient to plead a plausible fraud claim under either the PSLRA or Rule 9(b).

Plaintiffs also did not allege any contrary current facts to support their sweeping assertion that "BMS knew," but failed to disclose, that its FDA applications for liso-cel and ide-cel were "deficient," "insufficient," or "deliberately or recklessly incomplete." *Id.* Those unfounded allegations are impossible to square with plaintiffs' acknowledgement

43

that both applications received FDA approval, largely on the timing provided for in the CVR Agreement, despite significant disruptions due to the COVID-19 pandemic. *Id.* ¶¶ 185, 191. The FDA's decisions are "conclusive" as to this subset of plaintiffs' claims. *Philip Morris*, 89 F.4th at 430.

Allegations about setbacks in the FDA approval process that occurred *after* various challenged updates or predictions cannot support any plausible inference of falsity. "Corporate officials need not be clairvoyant" to avoid liability for securities fraud. *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[W]e have refused to allow plaintiffs to proceed with allegations of fraud by hindsight."); *see also Gallagher v. Abbott Labs.*, 269 F.3d 806, 810 (7th Cir. 2001) ("Unless Abbott had a time machine, it could not have described on March 9 a letter that had yet to be written.").

Similarly, hindsight opinions from an anonymous "FDA Biologics Expert" are not factual allegations and are not a substitute for them. *Bristol-Myers Squibb Co.*, 28 F.4th at 354; *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (expert opinion allegations not entitled to "a presumption of truthfulness"); *see* Compl. ¶¶ 195-96

44

("expert" opinion that pandemic cannot explain failure to obtain FDA approval by milestone date); *id.* ¶¶ 203-05 ("expert" opinion that there is "statistically significant difference" in timelines for liso-cel and other applications).

Finally, plaintiffs did not plausibly allege that problems noted by the FDA in its inspection of two liso- cel manufacturing facilities were known before the inspections occurred. Compl. ¶¶ 255, 258, 262, 264, 271. In any event, challenged statements commenting on inspection delays because of the COVID-19 pandemic were not actionable because they did not also include discussions about the facilities' preparedness for those inspections.[13] *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) (requiring disclosures to be complete "does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise."); *Acito v. IMCERA Corp.*, 47 F.3d 47, 52 (2d Cir. 1995) (rejecting securities claims based on

---

[13] Compl. ¶¶ 254, 270 (pandemic could impact FDA's "ability to conduct on-site inspections"); ¶ 257 (some FDA reviewers "will also be pulled into the inspection related activities that might be coming along for the COVID-related vaccines"); ¶ 261 (COVID "and the complexity of travel" increases "the risk to the process").

45

alleged failure to disclose preliminary inspection results where "no materially adverse action was taken" by FDA) (citation omitted).[14]

### 2. Many Statements Were Subject to the Safe Harbor.

Most of the challenged statements also were forward-looking and shielded from liability by the PSLRA safe harbor. 15 U.S.C. § 78u-5(c)(1); *see also* 15 U.S.C. § 78u-5(c)(2) (oral statements). These included: predictions about BMS's ability to meet the CVR milestones, Compl. ¶¶ 242, 277; discussion of potential delays in the FDA inspections and approval timeline because of the COVID-19 pandemic, *id.* ¶¶ 245, 254, 257, 261, 269-70; and statements about the potential timing of regulatory filings or FDA decisions, *id.* ¶¶ 233, 235, 249, 251, 256, 265, 274.

As discussed, courts recognize statements concerning an ongoing or future FDA approval process to be "classically forward-looking," because "they address what defendants expect[] to occur in the future." *Sanofi*,

---

[14] Plaintiffs never have argued for a "scheme" claim under Rules 10b-5(a) or (c), despite their occasional use of that word in their argument. "[M]isstatements and omissions cannot form the 'sole basis' for liability under the scheme subsections." *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022) (quoting *Lentell Merrill Lynch & Co.*, 396 F.3d 161, 171 (2d Cir. 2005)). That is all that was alleged here.

87 F. Supp. 3d at 535; *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 585 (S.D.N.Y. 2016); *see* 15 U.S.C. §§ 78u-5(i)(1)(A), (B), (D) (definition of forward-looking statements). BMS identified such statements as forward-looking in its Form 10-K. JA 479.

The statements also were accompanied by meaningful cautionary language, both in BMS's annual report on Form 10-K, filed on February 24, 2020, and in its quarterly reports on Form 10-Q, filed on May 7, August 6, and November 5, 2020. *See* JA 450, 662, 796, 926. BMS referred investors to these cautionary statements in each of the press releases and earnings calls that plaintiffs challenge, and those cautionary statements can be considered in evaluating plaintiffs' claims. 15 U.S.C. § 78u-5(e); s*ee* JA 554-611, 671-737, 849-69, 935-59.

The risk factors warned that "if the milestones specified in the CVR agreement are not achieved ***for any reason*** within the time periods specified therein, no payment will be made under the CVRs and the CVRs will expire without value." JA 450 (emphasis added); *see also* JA 660, 662, 794, 796, 924, 926. As the year progressed and the pandemic emerged, the Forms 10-Q also warned "that the COVID-19 pandemic could delay the timing of the FDA's approval decisions" and, if FDA

review extended past the milestone dates, "no payment will be made under the CVRs and the CVRs will expire without value." JA 662, 796, 926.

This cautionary language meaningfully warned investors about the risk that the CVRs might expire valueless, depending on developments in the FDA approval process. The safe harbor therefore shields the defendants from liability for the challenged forward-looking statements. *See Sanofi*, 87 F. Supp. 3d at 536; *see Delcath*, 36 F. Supp. 3d at 334.[15]

### 3. Some Statements Were Facially Inactionable.

Several challenged statements were generalized expressions of corporate optimism that were inactionable as a matter of law. *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173-74 (2d Cir. 2020); *see Philip Morris*, 89 F.4th at 417-18 (rejecting as "mere puffery" statements offering "only generally optimistic opinions" about scientific studies). These included statements that BMS was "committed" to working with the FDA or obtaining FDA approval of liso-cel; that BMS would "continue

---

[15] In addition, as discussed below concerning plaintiffs' insufficient scienter allegations, *see infra* at 49-59, plaintiffs did not allege facts supporting an inference that any of the defendants had "actual knowledge" that any of these statements was false. 15 U.S.C. §§ 78u-5(c)(1).

to work closely" with the FDA; that BMS was "looking forward" to obtaining FDA approval; or that the FDA approval process was "on track" or "going well." Compl. ¶¶ 242, 247, 256-57, 261, 265, 274, 277.[16]

## B. Plaintiffs Did Not Plead Facts Supporting a "Strong Inference" of Scienter.

The focus of plaintiffs' appellate argument is the district court's repeated holding that they had not alleged facts supporting the "strong inference" required under the PSLRA that BMS or the two individual defendants acted with fraudulent intent in making the challenged statements. 15 U.S.C. § 78u-4(b)(2) ("strong inference" requirement); *see* Pls. Br. at 15-50. The district court was correct. There was *no* plausible or reasonable inference of scienter to be drawn from the hindsight allegations here, much less one that was "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

This Court has recognized two ways a securities plaintiff can plead scienter: "(a) by alleging facts to show that defendants had both the

---

[16] Alternatively, some of those statements were opinions for which plaintiffs did not plausibly allege falsity under *Omnicare*. *See supra* at 39 (discussing *Omnicare* standard for statements of opinion).

motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quoting *Acito*, 47 F.3d at 52). The district court correctly found plaintiffs' allegations lacking under either approach.

### 1. Plaintiffs Did Not Plausibly Allege Any Motive to Defraud.

As the district court correctly observed, pleading securities fraud on the basis of motive and opportunity requires more than alleging the defendants had "goals that are possessed by virtually all corporate insiders . . . ." JA 968 (quoting *S. Cherry St., LLC v. Hennesee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)); *see generally Novak*, 216 F.3d at 307 (articulating motive and opportunity standard). There must be plausible allegations that a defendant "benefitted in some *concrete* and *personal* way from the purported fraud." *JP Morgan Chase*, 553 F.3d at 198 (quoting *Novak*, 216 F.3d at 307-08) (emphasis added).

Goals "such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation" therefore "do not constitute 'motive' for purposes of this inquiry." *Id.*; *see Kalnit*, 264 F.3d at 142 (to establish motive, plaintiff must point to the

50

"specific benefit that would inure to the defendants that would not be either generalized to all corporate directors or beneficial to all shareholders").

Plaintiffs did not plead any plausible personal motive for either individual defendant to commit securities fraud here. Dr. Hirawat is never mentioned in plaintiffs' motive arguments. Pls. Br. at 45-50. Plaintiffs argue that Dr. Caforio allegedly was concerned that BMS's "stock had been dropping," and about "being fired if [BMS's] performance did not improve dramatically." Pls. Br. at 47. Similarly, they alleged below that "[b]y avoiding the $6.4 billion payout in 2021," he and others "increased Bristol's net earnings in 2021 from $600 million to $7.0 billion." Compl. ¶ 206.

But as the district court correctly observed, improving stock performance and increasing net earnings are the types of "paradigmatic objective[s]" any corporate officer would have and, as such, were not sufficient to plead scienter based on alleged motive and opportunity. SPA 9; *see New England Carpenters Guar. Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023) (rejecting motive allegations of "financial incentives to keep share prices high"); *S. Cherry St., LLC*, 573

F.3d at 109 (alleged "desire to . . . sustain the appearance of corporate profitability" or "maintain a high stock price" insufficient); *JP Morgan Chase*, 553 F.3d at 198 (motives "common to most corporate officers" are insufficient to establish scienter).[17]

The typical motive alleged in securities fraud cases is the sale of stock by insiders before the announcement of bad news. *JP Morgan Chase,* 553 F.3d at 198. But there were no such allegations here. Indeed, there were no allegations of transactions in BMS securities at all. That strongly undercuts any inference of a motive to defraud. *Acito*, 47 F.3d at 54; *see In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 289 (S.D.N.Y. 2006) (lack of insider sales "undermines plaintiffs' motive allegations"); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) (absence of stock sales "is inconsistent with an intent to defraud").

Plaintiffs assert that the absence of stock sales was "***consistent*** with an expectation that Liso-cel would miss its deadline and then get

---

[17] Plaintiffs have abandoned their argument that the individual defendants' executive compensation plans provided a motive to defraud. Hitting targets set by incentive-based compensation programs is just another goal shared by most corporate officers. *S. Cherry St.*, 573 F.3d at 109; JA 969.

approved shortly thereafter." Pls. Br. at 47 (emphasis in original). But the court must "take into account plausible opposing inferences," including "nonculpable" ones. *Tellabs*, 551 U.S. at 323-24. The most plausible inference to be drawn from the lack of any securities transactions is not that the defendants were acting with fraudulent intent but rather that they were in compliance with applicable rules.

Similarly, plaintiffs' argument that BMS never sought to repurchase CVRs did not support any inference of motive. As the district court noted, plaintiffs could cite no cases that supported that argument; at the same time, there is authority rejecting it. JA 970; *see Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 338 (S.D.N.Y. 2011) (issuer's lack of stock repurchases did not support motive inference).

Finally, plaintiffs did not plead motive through their repeated assertion that BMS was "slow-rolling" the FDA approval process for liso-cel "for the purpose of avoiding a $6.4 billion payment to CVR holders." Compl.¶ 1; *see id.* ¶¶ 233-78. The district court correctly held that theory "defie[d] economic reason," because intentionally missing the CVR milestone dates only would have subjected BMS to a lawsuit for breach of the CVR Agreement seeking the same amount in damages.

SPA 9 (quoting *JP Morgan Chase*, 553 F.3d at 203). Plaintiffs mistakenly assert the same could be said in any securities fraud case. Pls. Br. at 49. But most cases are not premised on an allegedly intentional breach of contract, as this one was. *See* Compl. ¶ 1.

Plaintiffs' contention that the size of the potential CVR payment was another motive is just a variation on this theme. As the district court correctly recognized, "the size of the fraud alone does not create an inference of scienter." JA 968 (quoting *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Ryanair Holdings PLC*, 2020 WL 2834857, at *5 (S.D.N.Y. June 1, 2020)). Similarly, the "all-or-nothing" structure of the CVRs is not a plausible motive. It was the product of arm's-length negotiations between BMS and Celgene, and it was approved by both companies' stockholders. JA 970.

### 2. Plaintiffs Did Not Plausibly Allege Conscious Misbehavior or Recklessness.

Given plaintiffs' failure to plead any motive to defraud, they were required to plausibly allege the challenged statements were made with knowledge of their falsity or with such a degree of reckless disregard for the truth as to "evince[] 'an extreme departure from the standards of ordinary care.'" *Bristol-Myers Squibb Co.*, 28 F.4th at 355 (quoting

*Kalnit*, 264 F.3d at 142); *see DeCarlo*, 80 F.4th at 178 (conscious misbehavior "requires a showing of deliberate illegal behavior").

That required allegations of "(1) *specific* contradictory information [that] was available to the defendants (2) *at the same time* they made their misleading statements." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) (emphasis in original). The district court correctly held that plaintiffs had not met this demanding test. SPA 10-14; JA 971-76.

Plaintiffs never alleged any contrary, contemporaneous fact to support their claims of fraud, as already discussed. *See supra* at 43-44. Their brief argues that a series of alleged "missteps" in the FDA approval process must not have been a coincidence. Pls. Br. at 16-20. As implausible as that argument is by itself, it is even less persuasive given plaintiffs' failure to link any of these alleged "missteps" to facts in conflict with the public statements they allege were fraudulent. *See* Pls. Br. at 16-20; *see* SPA 10-12; JA 971-72 (district court dismissal opinions).

That is because plaintiffs' entire argument reduces to just another version of impermissible "fraud by hindsight." *Philip Morris*, 89 F.4th at 428-29; *see Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016)

55

(rejecting "theory of scienter" that, because product "ultimately turned out to be a failure, defendants must have known that it would be a failure and lied about this fact to investors").

In context, the supposed "missteps" amount, at most, to "corporate (or government agency) 'mismanagement,'" as the district court correctly found. JA 975; SPA 14. That is not actionable as securities fraud. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) ("Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement."); *Lululemon*, 14 F. Supp. 3d at 562 ("This narrative requires the Court to stretch allegations of, at most, corporate mismanagement into actionable federal securities fraud. This is not the law.").

Plaintiffs' argument that their hindsight allegations amount to circumstantial evidence of knowledge falls far short of raising an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *see* Pls. Br. at 20-38.

*First*, hindsight allegations attributed to an unidentified, alleged "FDA Biologics Expert" do not support an inference of scienter. Opinions

56

are not facts. *Bristol-Myers Squibb Co.*, 28 F.4th at 354. Nor can an expert "opine on the state of mind or knowledge of a party," as the district correctly observed. SPA 12 (citing *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018)). Plaintiffs cannot escape the effect of these principles by arguing that their supposed expert "was merely substantiating what assumptions one could make about the regular flow of information at" BMS. Pls. Br. at 38 n.7. Such guesswork is not entitled to deference in assessing scienter allegations. *See Bristol-Myers Squibb Co.*, 28 F.4th at 351, 354 (expert opinion about what industry participants would have understood about a drug trial could not "rescue" complaint's failure to allege "particularized facts sufficient to state a claim for fraud").

*Second*, and similarly, allegations attributable to alleged "confidential witnesses" also do not provide the basis for a plausible inference that the individual defendants were lying. Most of the alleged "confidential witnesses" never even worked for BMS. JA 1114-15. None allegedly interacted with either Dr. Caforio or Dr. Hirawat. Pls. Br. at 37. The allegations therefore cannot support an inference of conscious wrongdoing under settled law. *Campo v. Sears Holdings Corp.*,

57

371 F. App'x 212, 217 (2d Cir. 2010) (dismissing claims where confidential witnesses did not know if defendants "actually accessed or reviewed the reports"); *see Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 n.19 (S.D.N.Y. 2020) (collecting cases).

*Third*, allegations that Dr. Caforio and Dr. Hirawat were members of two internal committees relating to merger integration and BMS's new product pipeline also do not support plaintiffs' argument that they acted with scienter. Pls. Br. at 23-24; *see* Compl. ¶¶ 178-82. There is no allegation that either committee knew information at odds with any challenged statement at the time it was made. Generalized descriptions of the committees and their roles are not a basis to infer that committee members, including the individual defendants, acted with an intention to defraud. SPA 10-11; *see Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 653 (S.D.N.Y. 2007) ("Mere membership in a committee with oversight responsibilities, however, is not enough to give rise to an inference of recklessness.").

*Fourth*, beyond failing to allege facts suggesting that either individual defendant lied when he made challenged statements, plaintiffs also did not plead facts supporting an inference of "corporate scienter" as to BMS based on the allegedly fraudulent intent of other responsible individuals within BMS. Pls. Br. at 38-44; *see Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008). At a minimum, that would have required factual allegations of corporate knowledge that *conflicted with* the challenged statements at the time they were made. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015). The district court correctly held plaintiffs had not made such a showing, through their "confidential witness" allegations or otherwise. JA 975.

In sum, as the district correctly concluded, plaintiffs did not satisfy their burden to plead facts giving rise to a "strong inference" of scienter. Weighing all competing inferences, "the more compelling inference to be drawn from the pleaded facts is that both BMS and the FDA experienced embarrassing, but not 'extreme' setbacks during an unprecedented pandemic." JA 974 (quoting *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir.

2000)). That does not support a cogent or compelling inference that any defendant acted with an intent to defraud.

## C. The "Controlling Person" Claims Were Correctly Dismissed.

The "controlling person" claims against Dr. Caforio and Dr. Hirawat under Exchange Act § 20(a) were correctly dismissed based on plaintiffs' failure to allege a primary violation. *Bristol-Myers Squibb*, 28 F.4th at 356-57; *see* SPA 15. The claims also were subject to dismissal for failure to plausibly allege culpable participation by either defendant in any primary violation. *ATSI*, 493 F.3d at 108; *see In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020).

## III. The District Court Correctly Denied Plaintiffs Leave to Further Amend Their Pleading.

The district court properly granted the defendants' second motion to dismiss with prejudice. In its first dismissal opinion, addressing claims in plaintiffs' first amended complaint, the court placed plaintiffs "on notice of deficiencies in" their claims and gave plaintiffs a further chance to address them. *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999); *see* JA 960-82.

However, the second amended complaint fared no better, and plaintiffs did not specify any "additional facts or legal theories . . . they

might assert if given leave to amend" their complaint another time. *UBS AG*, 752 F.3d at 188. Indeed, plaintiffs did not even formally move for leave to amend, confining their request to a footnote contained in their second opposition brief. SPA 15. That request was limited to plaintiffs' securities fraud claims. *See* ECF No. 121 at 25 n.30. Plaintiffs *never* requested permission to amend their Securities Act claims or those arising under section 20(a) of the Exchange Act.

On appeal, as they did in their footnote below, plaintiffs point to unspecified outstanding "FOIA requests" as a rationale for further amendment of their securities fraud claims. Pls. Br. at 57; SPA 15. But plaintiffs still do not explain the facts they expect to learn if the FDA ever produces material in response to their FOIA requests or how they would improve their inadequate allegations of "fraud."

Under the circumstances, the district court correctly concluded that leave to amend was "unlikely to be productive" and denied plaintiffs leave to amend. SPA 15 (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)); *see Noto v. 22nd Century Grp. Inc.*, 35 F.4th 95, 107-08 (2d Cir. 2022) (affirming denial of leave to amend where plaintiffs

"did not presently have additional facts" and "did not explain what they would add" to cure defects in complaint).

## **CONCLUSION**

The judgment in favor of the defendants below should be affirmed in its entirety.

Dated:  New York, New York
       June 28, 2024

DLA PIPER LLP (US)

By: */s/ John J. Clarke, Jr.*
    John J. Clarke, Jr.
    Jessica A. Masella
    Steven M. Rosato

1251 Avenue of the Americas
New York, NY 10020
(212) 335-4500
john.clarke@us.dlapiper.com
jessica.masella@us.dlapiper.com
steven.rosato@us.dlapiper.com

*Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation in Second Circuit Rule 32.1(a)(4) because it contains 11,875 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

*/s/ John J. Clarke, Jr.*
John J. Clarke, Jr.
